BATA SHOE CO., INC. *v.* UNITED STATES

No. 4512.—Invoices dated Zlin, Czechoslovakia, September 1, 1936, etc.
Certified September 3, 1936, etc.
Entered at New York September 21, 29, 1936.
Entry Nos. 738183, 738182, 741984.

(Decided February 3, 1939)

*James W. Bevans* for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* special attorneys), for the defendant.
*Lamb & Lerch* (*John G. Lerch* of counsel), amici curiae.

SULLIVAN, Judge: The question raised by these reappraisements is the proper dutiable value of certain merchandise, described in the invoices as "unfinished velvet boots." This merchandise was imported from Zlin, Czechoslovakia, the invoices being certified on September 3, September 5, and September 14, 1936, respectively. Each item involved was invoiced and entered at 54 cents, United States currency, per pair, and appraised at $2.25, United States currency, per pair, less 5 per centum discount, packed, the basis of appraisement being the American selling price.

At the beginning of the trial, plaintiff's counsel stated—

They were appraised on the basis of the American selling price of what is contended to be a like or similar carriage boot manufactured in the United States. It is the importer's contention, first, that the article imported is not a finished shoe, and therefore is not classifiable within the Presidential proclamation which shifts the basis of appraisement to American selling price as to certain shoes. Second, that if these unfinished carriage boots are shoes within that proclamation then there is no like or similar article manufactured in the United States. * * *

We contend further that the basis of appraisement should be cost of production, there being no foreign value, as we shall prove, no open export value, and no United States value, for these things in the condition in which imported.

This case was originally assigned to Presiding Judge McClelland. At the close of the hearing on October 18, 1937, before Judge McClelland, the case was submitted by both sides. On May 25, 1938, Judge McClelland rendered an opinion and direction that these appeals be restored to the calendar, wherein he stated:

I am therefore of the opinion that the imported articles were not, as they came into the United States, substantially completed or reasonably adapted to and suitable for use and service as carriage boots, and I hold that they were therefore not within the purview of paragraph 1530 (e) nor of the proclamation of the President, *supra.* [T. D. 46158, 63 Treas. Dec. 232.]

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Having held that the imported articles were not within the purview of the proclamation, *supra,* it follows that appraisement of the unfinished boots in issue

must be made on the basis of one of the values specified in section 402, *supra*, other than the American selling price.

There is evidence in the record which has not been controverted that the unfinished boots in issue were made on special order for the importer herein; that unfinished boots such as or similar to the boots in issue are not sold in Czechoslovakia either for home consumption or for exportation to any other country; that the importer is the exclusive purchaser in the United States for such articles, and that they are not offered for sale in the United States in the condition as imported. I therefore hold that at the time of exportation there was no foreign value, no export value, or no United States value, as those values are defined in section 402 of the Tariff Act of 1930, for the unfinished boots here involved.

The presiding judge then closed by stating that on the record before him he was unable to find the cost of production of the articles in issue in accordance with the statute, and for that reason directed "that the appeals be restored to the calendar in order that opportunity may be afforded counsel for the plaintiff and the defendant to offer additional evidence upon the basis of which I may find the statutory cost of production of the unfinished boots here involved." (See Reap. Dec. 4330, 73 Treas. Dec. 1600.)

Subsequently, these appeals were assigned to the writer of this opinion, and on December 12, 1938, came before him for hearing. The Government having requested a continuance, these appeals came up for final hearing on January 16, 1939, when the Government introduced in evidence the report of Lucien Picard, Treasury representative, dated December 14, 1938. It was received in evidence as Exhibit 9. The Government also introduced in evidence a report of Treasury Representative Horace A. Browne, dated October 31, 1938, as Exhibit 10.

In view of Judge McClelland's conclusion that the proper method of valuation is that of cost of production, and my full agreement in such conclusion, having examined the facts with reference thereto and determined that the American selling price is not the proper method, as stated by Judge McClelland, I stated at the hearing:

I will take the two exhibits and the papers, and read all the decisions and the affidavits you have offered and I will try to arrive at the cost of production.

According to section 402 (f) of the Tariff Act of 1930 the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under

consideration in condition, packed ready for shipment to the United States; and
(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The only evidence before Presiding Judge McClelland as to cost of production was, as stated by him in Reap. Dec. 4330, *supra*, the affidavit of Joseph Hlavnička (Exhibit 6) from which he quoted in his opinion, *supra*. Inasmuch as Judge McClelland considered this affidavit insufficient to establish cost of production I will not consider it. The only new evidence since the rendition of Judge McClelland's opinion, *supra*, is contained in Exhibits 8, 9, and 10, Exhibit 8 being the affidavit submitted by the plaintiff, and Exhibits 9 and 10 special agents' reports. The briefs of the parties were all filed prior to the rendition of Judge McClelland's opinion, *supra*, and do not comment on or explain the evidence contained in Exhibits 8, 9, and 10. Consequently they do not assist me.

First: What was the cost of materials entering into a pair of these "unfinished velvet boots"?

Exhibit 8, the affidavit of Joseph Hlavnicka, director of the manufacturing concern shipping these boots, states it to be 6.99 Kc.

Second: What was the cost of the "fabrication, manipulation, or other process employed in manufacturing" a pair of these boots?

Mr. Hlavnicka states in Exhibit 8 that it consists of wages, amounting to 2.70 Kc. per pair.

Third: What was "the usual general expense"?

Mr. Hlavnicka states it to consist of "Factory overhead Kc. 1.—" and "Administration overhead Kc. 0.40."

Fourth: "The cost of all containers" etc., and "all other costs, charges, and expenses" incident to placing a pair of these boots" in condition, packed ready for shipment to the United States" is stated by Mr. Hlavnicka to be "Kc. 0.67."

Fifth: The addition for profit is stated by Mr. Hlavnicka in his affidavit, Exhibit 8, as follows:

Profit realized on the aforesaid unfinished velvet boots Kc. 1.24, which is 11.1% of the amounts stated under paragraphs (1) and (2).

Exhibit 9 does not assist me in arriving at cost of production of a pair of these boots. It contains a multitude of figures involving not only velvet boots, but tennis oxfords, velveteen boots, rubber shoes, tires, toys, and floor coverings and I cannot segregate therefrom the figures of costs of production of one pair of the merchandise in question, as indicated in section 402 (f), *supra*. The special agent does, however, indicate a profit of 6.77 per centum, which is less than that figured by Mr. Hlavnicka, but whether this profit is calculated on one

pair of these velvet boots or on the entire output of the factory is not disclosed.

In Exhibit 10 the special agent states "A profit of 10% he said is considered to be usual." He states the costs, after itemizing them, as follows:

| | |
|---|---:|
| Material total | Cr. 6. 99 |
| Labor total | 2. 70 |
| Overhead | 1. 40 |
| Packing | 0. 67 |
| Profit 11% of 11.09 | 1. 24 |
| Total cost | 13. 00 |

These figures of the special agent, contained in Exhibit 10, correspond exactly with those stated by Mr. Hlavnicka in his affidavit, Exhibit 8.

In view of Exhibits 8 and 10, being all the evidence with reference to cost of production, and my approval of the finding of Judge McClelland that there is not any foreign or export value, nor any American selling price, I find the cost of production of the merchandise in question to be the proper dutiable value, as follows:

Kc. 13 per pair, which figures in United States currency, at $0.0413, $0.5369, or practically 54 cents, United States currency, the invoiced and entered value.

Judgment accordingly.